**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4078

WILLIAM HENRY COLEMAN,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Terrence W. Boyle, Chief District Judge.
(CR-96-10)

Submitted: February 26, 1999

Decided: March 18, 1999

Before HAMILTON and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Norman Butler, Charlotte, North Carolina, for Appellant. Mark T.
Calloway, United States Attorney, Brian Lee Whisler, Assistant
United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

William Henry Coleman appeals his conviction for a violation of 18 U.S.C. § 922(g) (1994). After Coleman was arrested on a state warrant for murder, the grand jury returned a single count indictment charging Coleman with possession of a Ruger 9 millimeter semi-automatic pistol and a prior conviction of a felony. Before trial, a magistrate judge recommended that Coleman's motion to suppress the firearm that officers found in his vehicle when they arrested him be denied. The Government informed Coleman and the district court that Coleman was eligible for sentencing as an armed career criminal under the provisions of 18 U.S.C. § 924(e) (1994). In doing so, the Government specified three predicate offenses it claimed qualified as violent felonies or serious drug offenses. See 18 U.S.C. § 924(e)(2).

After the jury convicted Coleman, the district court determined that Coleman was an armed career criminal as defined by the statute and sentenced him to 210 months imprisonment. Coleman appeals his conviction and sentence. In this appeal, Coleman claims that there was error at virtually every stage of his indictment, trial, and sentencing. Finding no merit to any of his contentions, we affirm.

In attempting to attack his conviction, Coleman first challenges the indictment returned against him by the grand jury. Coleman argues that the Government and district court improperly amended the indictment. In doing so, Coleman correctly notes that the indictment specifically charged that he had previously been convicted of "Felonious Possession with Intent to Distribute Cocaine." When the district court discovered that Coleman had actually been convicted of felonious possession of cocaine, the court amended the indictment to conform to the evidence produced at trial. Generally speaking, an amendment to an indictment which changes the offense charged is error per se and must be corrected on appeal, even in the absence of an objection. See United States v. Floresca, 38 F.3d 706, 714 (4th Cir. 1994) (en banc). However, an amendment may stand if it does not change the essential or material elements of the charge so as to cause prejudice to the defendant. See United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991).

2

In this case, none of the elements of the charge were altered. The only amendment Coleman complains of is a correction of the description of the predicate state felony. Rather than changing an element of the offense, the amendment merely affected the evidence by which the Government proved one of the elements. See Old Chief v. United States, 519 U.S. 172, 186 (1997). Coleman does not suggest how this technical amendment prejudiced him. The indictment noted the correct date of conviction and the correct jurisdiction despite incorrectly naming the offense. Coleman does not allege that he would have been able to show that he was not guilty of the predicate offense if it had been more specifically identified in the original indictment. As a result, there was no reversible error in the district court's amendment of the indictment.

Coleman next contends that the district court erred in denying his pre-trial motion to suppress both the pistol and his statements which led to the discovery of the pistol. Coleman claims that his rights against self-incrimination under the Fifth Amendment were violated when the arresting officers asked him whether he had a gun in the car he was driving. The officers questioned Coleman about the gun prior to informing him of his rights as described in Miranda v. Arizona, 384 U.S. 436 (1966). The magistrate judge recommended that the district court allow the pistol and statements under the public safety exception to the mandate of Miranda. See New York v. Quarles, 467 U.S. 649, 657 (1984). Coleman argues that the exception should not have applied in this circumstance because he was already secured in the officers' vehicle. The district court accepted the recommendation of the magistrate judge and admitted the evidence over Coleman's objection.

It is well-settled that the public safety exception is grounded in law enforcement officials' ability to "distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." Id. at 658-59. In this case, the officers arrested Coleman, a murder suspect with a history of violence, in a public area. Within a few minutes, there were a number of spectators close at hand. In addition, the arresting officers needed to move Coleman's vehicle to a safer location and planned to have it impounded. The officers' questions regarding the presence of a gun stemmed from

3

their concern for safety and to neutralize a potentially dangerous situation. See United States v. Brady, 819 F.2d 884, 888 (9th Cir. 1987). The district court did not err in accepting the report and recommendation of the magistrate judge and admitting the evidence under public safety exception to the Miranda warning requirement.

Coleman next complains that during discovery, the Government did not provide him with the grand jury testimony of one of the arresting officers who eventually testified at trial, Agent Martinez. Coleman contends that this omission constituted a Jencks Act violation. The Jencks Act provides that the Government is only required to produce requested materials "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C.§ 3500(b); see United States v. White, 750 F.2d 726, 729 (8th Cir. 1984) ("Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so."). Furthermore, an order to produce the material should be made "on motion of the defendant." 18 U.S.C. § 3500(b). Because there was no such motion in this case, the Government was not required to produce the grand jury transcripts in question. Moreover, even if we were to conclude that there was a violation, notwithstanding Coleman's failure to make an appropriate motion, he has not shown that the error was anything other than harmless. See United States v. Lewis, 35 F.3d 148, 152 (4th Cir. 1994).

Moving to his trial, Coleman next asserts that there was insufficient evidence to convict him of a violation of 18 U.S.C.§ 922(g). Specifically, Coleman claims that the Government failed to prove that his civil rights, among them his right to possess a firearm, had not been restored. Relying on United States v. Essick, 935 F.2d 28, 31 (4th Cir. 1991), Coleman correctly notes that in some § 922(g) prosecutions in North Carolina, the Government must demonstrate that the defendant possessed a firearm within five years of release from supervision. See id. In other words, in some circumstances, the Government must show that it is entitled to the assumption of the continued vitality of the prior conviction and that the conviction is not"so removed in time" that North Carolina would have ordinarily restored a defendant's civil rights. See United States v. Thomas , 52 F.3d 82, 85 (4th Cir. 1995). However, this court clarified that "the holding in Essick is limited to circumstances where the underlying North Carolina fel-

4

ony conviction occurred more than five years prior to defendant's firearm possession." Id. In this case, Coleman was arrested for possession of a firearm approximately two years after his conviction for the predicate offense. Under North Carolina law, Coleman's civil rights could not ordinarily have been restored. Consequently, the Government did not bear "the burden of proving independently the addition fact that [Coleman's] civil rights had not been restored." Id. Coleman's suggestion that the Government was required to do so is without merit.

Despite his failure to object to the jury instructions in any manner, Coleman contends that the district court misdefined reasonable doubt. Ordinarily, Coleman's failure to object would preclude his challenge on appeal of an allegedly inappropriate jury instruction absent plain error. See United States v. Rogers, 18 F.3d 265, 268 (4th Cir. 1994). However, if the court charged the jury with a constitutionally deficient reasonable doubt instruction, it amounts to"structural error" which is not subject to harmless error analysis. See Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993). The proper inquiry in reviewing this instruction is whether there is a reasonable likelihood that the jury applied the reasonable doubt standard in an unconstitutional manner. See Victor v. Nebraska, 511 U.S. 1, 6 (1994). On appeal, Coleman contends only that the district court "lessened" the Government's burden of proof by overemphasizing its definition of reasonable doubt and stating that the Government was not required to prove Coleman guilty beyond all possible doubt. Because the district court's instruction was virtually identical to the instruction we recently approved in United States v. Williams , 152 F.3d 294, 297-98 (4th Cir. 1998), we find that there is no risk that the jury misapplied the reasonable doubt standard.

Coleman also contends that the district court misled the jury into believing that possession with intent to distribute cocaine remained the predicate offense to the § 922(g) conviction even after the amendment of the indictment. Coleman suggests that the district court prejudiced his defense by convincing the jury that Coleman had been convicted of possession with intent to distribute. There was no plain error in the district court's oblique but mistaken reference to the offense listed in the unamended indictment. See Rogers, 18 F.3d at 268. The court correctly instructed the jury that they must find

5

whether Coleman had previously been convicted of a felony. See Old Chief, 519 U.S. at 186. The district court did not specifically mention offense that was incorrectly included in the indictment. As a result, there was no reversible error in the jury instructions.

Coleman makes several assignments of error regarding his sentence. In attacking the district court's determination that he was subject to an enhanced sentence as an armed career criminal pursuant to 18 U.S.C. § 924(e), Coleman first complains that it was impermissible for the Government to substitute an additional offense for an offense specified on the notice he received informing him of the applicability of the armed career criminal statute. The Government asked the district court to consider a store larceny conviction rather than a cocaine possession conviction when it was discovered that the possession conviction did not qualify as a predicate offense under § 924(e). Coleman contends without support that § 924(e) notice from the Government must refer to specific offenses and may not be altered without notice. However, when a defendant's sentence is subject to enhancement because he is an armed career criminal under the guidelines, due process does not require notice. See United States v. McDougherty, 920 F.2d 569, 575 (9th Cir. 1990).

Indeed, in United States v. Johnson, 973 F.2d 857, 860 (10th Cir. 1992), the Tenth Circuit, noting the compulsory"shall" used in § 924(e)(1), stated that if it comes to the court's attention that the defendant meets the requirements of the subsection,"[t]he sentencing court may invoke the enhancement sua sponte without a request by the government." Id. Other courts have more specifically addressed the notice issue as it pertains to specific prior convictions. See, e.g., United States v. Mauldin, 109 F.3d 1159, 1162-63 (6th Cir. 1997) ("[Defendant] contends that the government should be bound by its original notice [which incorrectly listed a prior conviction as carrying a maximum term of only six years]. The government correctly points out that the ACCA does not require notice prior to enhancement."); United States v. Gibson, 64 F.3d 617, 626 (11th Cir. 1995) (holding that defendant "received reasonable notice of his prior convictions and an opportunity to challenge them to satisfy due process" where "[a]lthough the government listed only one prior conviction in the indictment . . . the government filed a response to the district court's standing discovery order prior to sentencing" which "included a print-

6

out of [defendant's] prior criminal history and copies of each information and judgment filed in state court relating to three of [defendant's] prior state convictions"); United States v. Alvarez, 972 F.2d 1000, 1006 (9th Cir. 1992) ("We . . . find no support for the contention that the predicate felonies must be alleged in some formal notice pleading."). Coleman's due process rights are satisfied if the Government meets its burden to prove the predicate felonies by a preponderance of the evidence; McDougherty, 920 F.2d at 575, a fact which Coleman has never challenged. Moreover, Coleman had actual notice of the predicate offenses relied on by the Government in that his entire criminal history was set forth in his presentence report and delivered to him five months before sentencing. Coleman's challenge is without merit.

Coleman next contends that the district court abused its discretion in declining to grant a continuance after substituting the store larceny conviction for the felony possession conviction. Assuming without deciding that Coleman did not abandon his request for a continuance, as the Government suggests, we find that there was no error in the district court's decision to proceed with sentencing despite Coleman's initial request for a continuance. Without showing both that the district court's denial of a continuance was arbitrary and that it substantially impaired Coleman's opportunity to obtain a fair sentence, this court will not vacate a sentence because the district court denied the continuance. See United States v. Speed, 53 F.3d 643, 645 (4th Cir. 1995). Coleman contends that he was prejudiced because the denial of the continuance deprived him of the opportunity to investigate the validity of the third felony relied upon by the Government to prove that Coleman was an armed career criminal. Aside from the fact that Coleman did not pursue this claim before the district court, Coleman is not permitted to attempt a collateral attack at sentencing on the validity of the predicate conviction used for sentencing under § 924(e). See Custis v. United States, 511 U.S. 485, 492 (1994). Because Coleman has not shown substantial impairment of his opportunity to secure a fair sentence, and in the absence of any evidence that the court's decision was arbitrary, we find no error in the district court's decision to proceed with sentencing.

Finally, Coleman claims that one of the three offenses that the district court included as predicate offenses for Coleman's armed career

7

criminal status was an offense for which he had his civil rights restored. As a result, contends Coleman, the offense should not have been included. See 18 U.S.C. § 921(a)(20) (1994); United States v. Hassan-El, 5 F.3d 726, 733 (4th Cir. 1993). Specifically, Coleman disputes the district court's conclusion that his arrest within five years of his release from parole in 1988 on an 1984 voluntary manslaughter conviction prevented the restoration of his civil rights with respect to that conviction. Coleman contends that his civil rights were restored automatically on October 1, 1993, five years after his release from the voluntary manslaughter conviction. However, one month before that, Coleman was arrested for possession of cocaine and convicted of that offense in December of 1993. Although Coleman urges that the operative date should be the date of his conviction, more than five years after his release, we have held that the operative date is that of the commission of the next felony. See United States v. Clark, 993 F.2d 402, 405 (4th Cir. 1993). At the time of his arrest, before the five years had expired, Coleman was in possession of cocaine, a firearm, and cash. This constitutes the commission of a felony. As a result, the district court did not err in concluding that Coleman's civil rights had not been restored for the purposes of § 924(e) with respect to his voluntary manslaughter conviction.

Finding no merit to any of Coleman's assignments of error, we affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED